710

■ In the Matter of the Estate of PEARL L. KESSLER, Deceased. ROSE LEVITT, Appellant; IRVING JACOBS et al., as Coexecutors of WARREN L. KESSLER, Deceased, Respondents.

The decedent assigned the 194 shares of the Kessler Company stock two days short of one year before her death. The stock had been given to her by her husband many years before when he had formed the closed Kessler Company. That stock transfer was the subject of the major objection below, Rose Levitt the sole beneficiary under the will, contending that it was given at a time when the decedent was incompetent and when she had been subjected to undue influence by her husband-assignee. The record established that on numerous occasions commencing in June of 1961, the decedent informed Mrs. Mildred C. Mebel, her then attorney and executrix under her will, of her desire to give the stock in question to her husband. Mrs. Mebel so testified.

Essentially the case involves a factual determination as to whether gifts made by a wife to her husband could be successfully attacked. After a complete trial of the issues the experienced Surrogate found no infirmity in these transfers and withdrawal. We agree with that conclusion. Our difference with the dissenter arises solely from the effect to be given certain evidence indicating misconduct on the husband's part. Viewed in its totality, however, the evidence established the validity of the gifts and we see no compelling reason in the record to disturb the conclusion of the Surrogate. Concur — Eager, J. P., Nunez and Tilzer, JJ.; Steuer, J., dissents in part in the following memorandum:

I believe the determination of the learned Surrogate as to two of the three objections to the executor's accounting, which objections are the subjects of this appeal, to be against the weight of the credible evidence.

The deceased by will left her entire estate to her sister. Her husband was one of the executors. As he died before completing the administration of her estate, his executors are the accounting executors. For the purposes of this memorandum he will be referred to as the defendant. It appears that for some time prior to her death the deceased and her husband were not on good terms and she was contemplating a divorce. About 18 months before her death she was found to be suffering from a malignant brain cancer, and during this period she underwent brain surgery and was discharged from the hospital, only to return after two and a half months. She was again discharged, and died two months later. During the period of this illness there was testimony, which the Surrogate apparently credited, that relations between the spouses greatly improved.

There were several objections to the executor's account, three of which are the subject of this appeal. The first concerns 194 shares of Warren Kessler, Inc., a closed corporation conducted by the defendant; the second concerns a check for $5,900 on the decedent's bank account (more than three quarters of the account); and the third is an account in a savings bank in the name of both spouses. As to the last, I agree that the objection was properly overruled.

Defendant claims title to the shares by virtue of a gift. In determining whether there was such a gift, the following facts deserve paramount consideration. By virtue of testimony which the Surrogate found to be truthful it appears that the defendant tried desperately during the period of his wife's illness to have her revoke her will and execute a new one in his favor. He first prevailed upon her to instruct her attorney to do so. He bugged the interview at which the instructions were given. When the attorney informed him that she would not prepare such a will as she did not believe the decedent, due to her physical condition, had testamentary capacity, the defendant procurred a lawyer relative of his to draw a will according to instructions given by himself. This will was prepared by the lawyer without ever seeing the deceased. Whether it was executed does not appear, but for obvious reasons it was never offered for probate. Defendant procured what he wanted by other means. He had the decedent execute a transfer of the shares. This transfer was purportedly witnessed by his own accountant. But the accountant testified (and his testimony was not impeached but credited) that he never witnessed any such transaction and that his signature was obtained by trickery and fraud.

These inescapable facts speak far louder than any nice balance of medical testimony as to whether the deceased enjoyed lucid moments and was experiencing one of them at the time of making the so-called gift. No one can maintain that the defendant's acts were those of an honest man or would be indulged in by a dishonest one except as an extremity of desperation. I know that the trial court saw the witnesses and I freely grant the credit that this opportunity for appraisal affords. But these are hard facts and no amount of interpretive opinion as to the fortunate change in the relation of the spouses and as to the deceased's mental capacity—highly suspect at best—can change them. I hardly think that this is the kind of clear and satisfactory evidence of a decedent's donative intent that the law requires (*Matter of Gordon*, 17 A D 2d 165).

As to the $5,900 check, comprising the vast bulk of the decedent's cash resources, there is no evidence, merly surmise, that in view of the heavy expenses of decedent's illness this sum was given by the decedent to her husband. There is not even evidence that the proceeds of the check were devoted to this purpose.

Lastly, the Surrogate did sustain objections to the executor's account which involved findings that the husband took and converted small checks belonging to the decedent. All of these facts demonstrate a pattern that called for positive explanation before the gift of the check could be credited. The objections to these items should have been sustained.