HARVEY WEED, Appellant, v. THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, Respondent.

The sanity of every individual is presumed, and insanity cannot be presumed from the mere fact of suicide.

Where, therefore, a policy of life insurance contains a clause declaring it null and void, in case the insured dies by his own hand, and the insured commits suicede. it is incumbedt upon a party seeking to enforce the policy to prove that the self-destruction was not the conscious, voluntary act of one responsible for his actions, but the involuntary act of an insane person.

Acts and incidents which are as consistent with sanity as insanity, will not authorize the submission of the question to a jury.

In an action upon a policy containing said clause, it appeared. that the deceased committed suicide, and that the act was the result of an intention deliberately formed. The deceased had a severe attack of congestion of the brain some seven years prior to his death, and for several years before, and up to the time of his death periodical attacks of severe nervous headache, arising from indigestion or some functional derangement, and slight evidence was given that at times he was incoherent in answers to questions. Up to the time of his death he was

engaged in and transacted large business operations. It did not appear that he was imprudent or indiscreet in business matters, or that he was at any time suspected of being incompetent. His physician, who visited him a few hours before his death, saw no symptoms of insanity, and never discovered or suspected any impairment of mental faculties. *Held*, that the evidence did not authorize the submission to the jury of the question as to the insanity of the insured, and that plaintiff was properly nonsuited.

(Argued September 17, 1877; decided September 25, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York in favor of defendant, entered upon an order denying a motion for a new trial and directing judgment on exceptions.

This action was upon a policy of life insurance issued by defendant upon the life of James M. Benedict, and assigned by the insured to plaintiff.

The policy contained a clause that, in case the insured should " die by his own hand," the policy should " be void, null, and of no effect."

The insured committed suicide. It was claimed by plaintiff that the deceased, at the time of the commission of the act, was insane. The facts appearing in reference thereto are sufficiently stated in the opinion. At the close of the evidence the court ordered a nonsuit, to which plaintiff's counsel duly excepted. Exceptions were ordered to be heard, at first instance, at General Term.

*Samuel Hand*, for the appellant. There was no forfeiture of the policy, if the act of self-destruction was committed by the deceased while so bereft of reason as not to understand the nature and consequences of the act by which his life was terminated. (*Van Zandt* v. *Mut. Ben. L. Ins. Co.*, 55 N. Y., 169, 176; *Estabrook* v. *Un. Mut. L. Ins. Co.*, 54 Me., 224; *Brewster* v. *F. L. & T. Co.*, 4 Hill, 73; 8 N. Y., 299, 304.) The evidence was sufficient to have warranted a finding that the disease of the assured was such that his mind ceased to control his action, and should have been

submitted to the jury. (55 N. Y., 176; *Moore* v. *Han. Ins. Co.*, 1 L. & Eq. [Mich.], 632.) The judge who granted the nonsuit was wrong as to the burden of proof. (*Piedmont* v. *Ins. Co.*, 2 Otto, 377; *Van Valkenburgh* v. *Am. Pop. Ins. Co.*, 4 Hun, 583; Bliss on Ins., 584, 585.)

*W. A. Beach*, for the respondent. There was a breach of the condition of the policy rendering it inoperative and void, in case the insured should " die by his own hand." (*Van Zandt* v. *Mut. Ben. L. Ins. Co.*, 55 N. Y.. 169; *Mc Clure* v. *M. L. Ins. Co.*, id., 651.)

ALLEN, J. That the insured " died by his own hand" is not disputed, and by this act the policy was avoided, unless his mind was so impaired that he did not understand the consequences of his action, and that death would ensue. If he exercised volition, was capable of forming an intention, and with full knowledge that death would follow his action, his mind concurring in the act, he voluntarily destroyed his own life, the policy by its terms became "null and void, and of no effect." (*Van Zandt* v. *Mut. Ben. L. Ins. Co.*, 55 N. Y., 169; *McClure* v. *Mut. L. Ins. Co.*, id., 651.)

If the evidence in behalf of the plaintiff to prove insanity was such as rendered it proper for the determination of the jury, the nonsuit was improper; but if, although tending to prove the fact, it was insufficient to sustain a verdict in favor of the claim — and a verdict finding the fact would have been set aside by the court as not warranted by the evidence — the plaintiff was properly nonsuited. This is the general rule in all cases triable by a jury, and was applied to a case like the present in *McClure* v. *Mut. L. Ins. Co.* (*supra*), and a nonsuit upheld. It was also held in the same case, as it has been uniformly held in other cases, that as sanity is the normal condition of man, it is presumed as to each individual, and that it was incumbent upon the plaintiff to overcome this presumption by proof that the self-destruction was not the conscious, voluntary act of one

responsible for his actions; that the insured was, in fact, insane. Insanity cannot be presumed from the mere fact of suicide, as was said by Judge GROVER in the case cited, for the reason that "experience has shown that self-destruction is often perpetrated by the sane."

There was but little evidence given as to the mental condition of the deceased, and that little tended rather to show that he was in the full possession of his mental faculties, and that the act was the result of an intention deliberately formed and executed. The occasional and temporary affections of his head were not characterized or claimed to be the result of any lesion or organic disease of the brain, but would seem to have been periodical attacks of severe and proportionately prostrating nervous headaches, originating, as was said by the deceased, from indigestion or some functional derangement, and neither evidence of, or tending to, any disease of the brain or the impairment of the mental faculties. It need not be denied that during the progress of the attacks the deceased would be less competent to perform any mental operation, as he would be to make any physical exertion, than when in full health. But this is not insanity; and, at the time of the commission of the act in question, he was not laboring under this affection in its more severe forms. There is evidence that his mother had similar headaches, but whether they were, or could have been, inherited, is not material. To this class of affections very many are subject, but there is no evidence that they have any relation to, or connection with, insanity.

In 1858, the deceased passed through a serious illness from congestion of the brain, an acute disease, but that his mind was impaired after his recovery, or that any permanent injury to, or lesion of the brain, was the result of that sickness, was not proved. Up to the time of his death he occupied honorable and responsible positions in business corporations, and managed his own estate, having an office at which he transacted large business operations, and it does not appear that he was at any time suspected of being incompe-

tent.  There is no evidence that he labored under any delusion, or that he was not in all things prudent or discreet in the management of his affairs.  Slight evidence is given that on one or two occasions he was incoherent in answer to questions, but witnesses could not state the occasions or the incoherent answers made, and the evidence is not sufficient to warrant any presumption of insanity.  His physician, who was called to and visited him a few hours before the suicide, discovered no signs of insanity, and never discovered or suspected any impairment of his mental faculties.  The evidence of his actions at the time of the visit of the physician, and during the day, are at least consistent with, and to my mind proof, that he then contemplated suicide, and had deliberately prepared to perpetrate the act.  There was certainly nothing unusual, or to indicate a wandering mind, that he inquired of his son, who appeared at the family residence at an unusually early hour in the afternoon, why he had left his business and come home at that time.  The expression of the eye, which was interpreted by the son as "sharp and keen," may not have been as "peculiar" as the son now thinks it was; or if so, may have been the result of some fear that the son was ill, or had met with some misfortune, or that his presence might defeat his suicidal intention.  So, too, the transaction of asking the assistance of the son and getting to the room where he committed the act, is evidence of intelligent action to the accomplishment of a deliberate purpose.  Every act and incident relied upon as proving insanity is as consistent with sanity, and, indeed, more so, than with the insanity of the deceased.  A verdict that the deceased was insane could only be given upon mere conjecture—a possibility, or from sympathy with the family.

I find no error in the admission or exclusion of evidence. It was not necessary to prove that congestion of the brain was a disease having its seat in the brain.  That such was the disease in 1858 was proved and not controverted, and hence it was not necessary to prove what the physician said of its nature.  The plaintiff was permitted to, and did prove,

all the sicknesses of the deceased, and the objections to evidence which were sustained were technical, and to the form of the question or answer, and the evidence of every fact on that subject sought to be proved, was admitted. So the witnesses were permitted to testify fully to the appearance of the deceased on the occasions inquired after, and to the incoherencies of his replies to questions. The plaintiff was not deprived of any evidence which he sought to give by the rulings of the court.

The judgment must be affirmed.

All concur, except RAPALLO, J., not voting; MILLER, J., absent.

Judgment affirmed.