In the Matter of the Estate of MARIAN BOBULA, Also Known as MARYANN BOBULA, Deceased.

In the Matter of the Estate of JOHN BOBULA, Deceased.

CLAIRE McGANN, as Executrix of MARIAN BOBULA, Also Known as MARYANN BOBULA, Appellant-Respondent; LOUIS J. PIKUL, as Executor of JOHN BOBULA, Respondent-Appellant.

Fourth Department, March 31, 1966.

*Jacob Jacobson* for appellant-respondent.

*John J. Olszewski* and *John La Duca* for respondent-appellant.

BASTOW, J. By a prior decree in these two estate proceedings that is not before us for review, the Surrogate determined that the decedents (husband and wife) died simultaneously on August 28, 1964. Thereafter the respective representatives of the estates submitted a controversy to the Surrogate upon an agreed statement of facts (CPLR 3222). The dispute centered upon the ownership of 10 separately described assets of real and personal property. The determination of the Surrogate (45 Misc 2d 745) is not questioned as to seven items, but one or both estate representatives present for review the correctness of the decision as to three assets. We will consider them seriatim.

It is agreed in the submission that the husband shot his wife and then committed suicide and that the binding decree of simultaneous deaths has been made. We consider first a savings account standing in the names of husband and wife '' jointly, survivor to take.'' The amount on deposit is not stated in the submission and the only additional information, except for the name of the bank, is the fact that the funds therein were originally the property of the husband except for $1,000 placed in the account by the wife.

The Surrogate decreed that the proceeds of the account should be evenly divided between the two estates to be distributed in accordance with the provisions of their respective wills. This determination was based upon the provisions of subdivision 3 of section 89 of the Decedent Estate Law which mandates such equal distribution of the property of joint tenants where '' there is no sufficient evidence '' that they have died otherwise than simultaneously.

This section became a part of the Decedent Estate Law in 1943 (L. 1943, ch. 479, as amd.). The section was a substantial adoption of the Uniform Simultaneous Death Act (9C U. L. A.). The purpose of the uniform act, it has been written, was '' to supplant the former arbitrary and complicated presumptions of survivorship with effective, workable, and equitable rules applicable to the ever-increasing number of cases where two or more persons have died under such circumstances that there is no sufficient evidence to indicate that they have died otherwise than simultaneously.'' (*Azevedo* v. *Benevolent Soc. of California,* 125 Cal. App. 2d Supp. 894, 901.)

We find, however, no legislative intent in this 1943 enactment to overrule certain pre-existing legal principles. *Bierbrauer* v.

*Moran* (244 App. Div. 87) is controlling. There, as here, a husband killed his wife and then committed suicide. It was impossible to determine which died first. There were funds on deposit in several banks in the name of the wife but the representative of the husband's estate contended that the moneys were jointly owned. The court wrote (pp. 90–91): "Even accepting this contention of the [husband's executor] as to the character of the ownership of these accounts and mortgages, to allow the executor of the will of [the husband] to share in them would be to allow the estate of the murderer to profit by his felonious act."

The fact (upon which the Surrogate placed emphasis) that there was no proof that this was a murder motivated by a desire to profit financially from the death of the wife (cf. *Riggs* v. *Palmer*, 115 N. Y. 506) is not controlling. The *Bierbrauer* holding was based on the principle (*supra*, p. 89) " that no man shall be permitted to profit by his own wrong. This rule is applicable to the wrongdoer's estate as well as to himself." We conclude that the proceeds of the joint bank account should be awarded to the estate of Mrs. Bobula.

A second asset in dispute is an undisclosed amount of United States Savings Bonds, Series "E", registered in the names of "John P. Bobula or Mrs. Marian Bobula". Such registration in co-ownership form was permissible under the Treasury Regulations as distinguished from registration in an individual name or in the name of an individual, payable in case of death, to another named person. (Code of Fed. Reg., tit. 31, §§ 315.55, 315.60, 315.65.) In the event of such co-ownership registration section 315.61 formerly provided (it was renumbered 315.62 as of Jan. 1, 1965) in part that " If either coowner dies without the bond having been presented and surrendered for payment or authorized reissue, the survivor will be recognized as the sole and absolute owner." Section 315.62 (now § 315.63) further provided for equal distribution if the deaths of the co-owners should be simultaneous or it could not be established either by presumption of law or otherwise which died first.

The Surrogate relying on this latter section directed that the bonds be considered assets belonging to both estates equally. This we conclude was also error. In this area there is a threshhold question as to whether State or Federal law should be applied. The general rule is that Federal law " governs the interpretation of the nature of the rights and obligations created by the Government bonds themselves." (*Bank of America* v. *Parnell*, 352 U. S. 29, 34.) Thus, it has been held " that the state law which prohibits a married couple from taking advan-

tage of the survivorship provisions of United States Savings Bonds merely because the purchase price is paid out of community property must fall under the Supremacy Clause.'' (*Free* v. *Bland,* 369 U. S. 663, 670.) But in that decision the court agreed with the view (p. 670) '' that there is an exception implicit in the savings bond regulations, including the survivorship provision, so that federal bonds will not be a ' sanctuary for a wrongdoer's gains.' '' (See, also, *Yiatchos* v. *Yiatchos,* 376 U. S. 306, 309.)

But if Federal law should be applied no different result would be reached. (Cf. *New York Mut. Life Ins. Co.* v. *Armstrong,* 117 U. S. 591; *Hunter* v. *Wheate,* 289 F. 604.) We conclude that the bonds should be decreed to be the property of the wife's estate. To permit the estate of the husband to share in these assets would violate the principle that '' No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime.'' (*Riggs* v. *Palmer,* 115 N. Y. 506, 511.)

The last disputed asset is a life insurance policy. The only information furnished by the submission is the name of the company, a policy number and the fact that the husband was the insured and the wife the named beneficiary. It is stated, however, in one of the briefs that the asset is part of a group policy issued to the employer of the husband. In such event the asset undoubtedly is a certificate issued by the insurer to the employer for delivery to the person whose life is insured. (Cf. Insurance Law, § 161, subd. 1, par. [d].)

The Surrogate implemented subdivision 4 of section 89 of the Decedent Estate Law which provides that where there is no sufficient evidence that an insured and beneficiary in a life policy have died otherwise than simultaneously the proceeds shall be distributed as if the insured had survived the beneficiary. For the reasons heretofore stated we do not view the provisions of this subdivision as necessarily controlling. It is impossible, however, to decide the issue upon the submitted facts.

Pertinent to a proper determination of the issue is precise information as to the nature of the policy — whether ordinary life, group life, or some other form of life insurance policy. An examination may then be made as to the provisions contained in the policy and any certificate issued thereunder. These provisions may then be considered in the light of certain standard provisions mandated by statute to be contained in policies issued or delivered in this State. (Cf. Insurance Law, §§ 155, 161.)

One of the crucial facts of which we have no knowledge is whether or not the right to change the beneficiary was reserved. If not so reserved it has been held that the named beneficiary has an absolute vested interest in the policy (31 N. Y. Jur., Insurance, § 1463). In such event it has been further held that where the insured murders the beneficiary and the policy thereby becomes payable to the insured or his estate, the interest under the policy is held upon a constructive trust for the estate of the beneficiary (cf. 4 Scott, Trusts [2d ed.], § 494.4 and cases therein cited).

On the other hand, if the right to change the beneficiary is reserved, the interest of the beneficiary has been variously called a mere expectancy, a vested interest subject to being divested, or an inchoate right. (31 N. Y. Jur., Insurance, § 1464.) In such a case somewhat different legal principles might be applicable. (Cf. 4 Scott, Trusts [2d ed.], § 494.4; *Union Cent. Life Ins. Co.* v. *Elizabeth Trust Co.,* 119 N. J., Eq. 505.) We do not pass on this issue or express any opinion as to the manner in which it should be decided.

The third and fifth decretal paragraphs of the decree should be reversed and a direction made that the assets therein described (savings bonds and joint bank account) shall be considered assets of the estate of Marian Bobula.

The fourth decretal paragraph which awarded the proceeds of the insurance policy to the estate of John Bobula should be reversed and remanded to the Surrogate of Erie County with a direction to dismiss this part of the submission unless there is filed an additional statement containing sufficient facts so that a proper decision may be made. (Cf. CPLR 3222, subd. [b], par. 5.)

WILLIAMS, P. J., GOLDMAN, HENRY and MARSH, JJ., concur.

Decree insofar as appealed from unanimously reversed on the law and facts and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion, without costs of these appeals to either party.