Bertram R. Gelfand, S.
The administratrix of the wife’s estate and the administrator of the husband’s estate, each instituted a discovery proceeding against the other, as well as against the public administrator, who is in the posture of a stakeholder of some of the property at issue.
The parties have entered into a written stipulation in which *235 they have agreed as to the distribution of some of the property of both decedents. Remaining at issue are the rights of the respective estates in the following property:
(1) Title to premises 4103 Lowerre Place, Bronx, New York, and the right to the keys to the premises which follow title;
(2) The furniture in the aforesaid premises;
(3) Any rent that might be due therefrom since the date of the decedents’ death;
(4) A savings account in the Chase Manhattan Bank in the name of both decedents with right of survivorship;
(5) Two New York Life Insurance Company policies, each having a face value of $35,000. Both were issued in September, 1973. The husband was the insured and the owner of one policy and the wife the beneficiary. On the other policy, the wife was the owner and the insured and the husband was the beneficiary; and
(6) A Columbia Mutual Insurance Company life insurance policy having a face value of $5,000, the husband being the insured and the owner and the wife the beneficiary.
The evidence adduced at the hearing established that both decedents met their untimely death on January 25, 1975 at the family residence. Police summoned to the scene discovered the body of the wife lying in bed on her back in a peaceful state. The husband’s body was found in the basement of the residence suspended from the ceiling by a rope around his neck. No one else was present. The premises were locked and there was no indication whatsoever of any forced entry or any clue to suggest the involvement of any third party in the death of either Mr. or Mrs. Pinnock.
The medical examiner’s report with reference to Enid Pinnock indicated that she had died of "asphyxia by ligature strangulation; homicidal” (choked to death by a rope). Her neck bore the mark of a rope similar to one found in the pocket of the pants worn by her husband at the time of his death. The testimony of the homicide detective who investigated the case indicated that it was his conclusion that the nature of her neck wound and the peaceful appearance of Enid Pinnock established that she had been strangled in her sleep, never having become sufficiently aware of the event to have struggled.
The medical examiner’s report with reference to Granville Pinnock stated the cause of death to be "asphyxia by hanging; *236 suicide.” Some pills were found near the wife’s body and an unsigned note found near the body of the husband stated that he had taken his wife’s life and then his own because his wife was going to take pills and he did not want to be left alone. However, the autopsy reports failed to indicate any significant alcohol or drug content in the body of either decedent.
Two weeks before their death, Enid Pinnock had served upon her husband a summons and verified complaint praying for a divorce based upon "cruel and inhuman treatment”. It had been stated by the wife to her counsel in the divorce proceeding that their marital life had been characterized by strife, threats and altercations which had caused her to conclude with finality that she wished to terminate the marriage. It appears that the husband did not wish to terminate the marriage.
A note written by Enid Pinnock which might be construed to imply some discussion of possible suicide by her in no way mitigates the fact that her life was terminated by an act of her husband’s totally independent of any proof which would establish this act to be in any way part of a consensual suicide pact. The language of the note is equally subject to being construed as reflecting a premonition that her husband would terminate her life.
It was the conclusion of the homicide detective who investigated the case that the death of Enid Pinnock had resulted from her being strangled by Granville Pinnock followed by Granville Pinnock’s suicide. The court is satisfied from the evidence adduced that this conclusion as to a homicide-suicide is correct and that Granville Pinnock did in fact by a wrongful act cause the death of Enid Pinnock and that he then took his own life. It is the conclusion of the medical examiner that Granville Pinnock’s life was terminated some 20 minutes after Enid Pinnock’s. This conclusion is totally consistent with all of the facts of the incident. Decedent, Enid Pinnock, sustained no injury which could have caused her death after the pressure which precluded her breathing had been released. This pressure had been applied by a rope which had been removed from her neck and was found in the pocket of her husband’s pants. In addition to interfering with her breathing while applied, the only injury the rope caused was lacerations of the surface of decedent’s neck. The facts establish that after Enid Pinnock’s life had terminated, her husband had had to remove the rope from her neck, write a note indicating that he had *237 terminated her life, and proceed from the bedroom to the basement, and take the steps to terminate his own life by hanging. All of the aforesaid substantiating that for a period of time after the death of Enid Pinnock she was in fact survived by Granville Pinnock. It is therefore determined that Granville Pinnock did in fact survive his wife.
It is well established that one may not inherit or succeed to property as a result of his own wrongful act (Riggs v Palmer, 115 NY 506, 511, 512). Likewise, a wrongdoer’s estate may not profit from the wrongful act (Bierbrauer v Moran, 244 App Div 87).
The real property at issue was owned by both decedents as tenants by the entirety. The question presented is the impact of the events that have been established upon the rights of tenants by the entirety.
The nature of the tenancy is pertinent since while one may not suffer a forfeiture of his own property as a result of a criminal act, it must be determined whether the wrongful act of the malfeasor has altered his property rights so as to improve his position as a result of the wrongful conduct. When both tenants by the entirety were alive, each had no more than a life interest in an undivided one half of the property with the possibility that if one survived the other tenant, upon such survival, the survivor would own the entire property outright in fee simple absolute. In the instant case, had Granville Pinnock not terminated Enid Pinnock’s life, his interest in the real property at issue, in no respect had the attributes of absolute one-half ownership of an undivided one half which flows from a tenancy in common. Without the death of Enid Pinnock, Granville Pinnock could not alienate Enid Pinnock’s right to total ownership of the property in the event she survived him. Accordingly, the possibility of determining that each decedent owned one half of the property as a tenant in common must be rejected since, to convert Granville Pinnock’s one-half life tenancy, with the possibility of ownership by surviving his wife, to a tenancy in common, would elevate the nature of his ownership as a result of his wrongful conduct. Likewise, Granville Pinnock forfeited whatever rights of survivorship he had when he became the survivor solely by dint of his wrongfully extinguishing the life of his wife.
Upon the facts in this matter, it must be concluded that a woman 35 years of age, in the absence of any proof of a significant illness, peacefully sleeping in her bed, would have *238 survived, the approximately 20 minutes that her husband lived, were it not for his wrongful act. Accordingly, if it were not for his wrongful act against her, in a tenancy of this nature, she would have survived her husband and succeeded to the total ownership of the property. The law must avoid giving any impact to a wrongful act in fixing property rights. Therefore, to the extent such a legal fiction benefits the victim or the victim’s estate, the wrongful act must be deemed not to have occurred in reaching a determination. A determination being based upon a disregard of any benefit to Granville Pinnock based upon his wrongful act, it is concluded that the estate of Enid Pinnock is the sole owner of the premises 4103 Lowerre Place, Bronx, New York, Granville Pinnock’s life tenancy having been extinguished by his death and his wife being his survivor were it not for his wrongful termination of her life 20 minutes before his own demise.
The contention of the husband’s estate that his act was not wrongful since he was insane at the time is not supported by any evidence, although the opportunity to adduce any such evidence was fully available to his estate at the hearing. It is well established that in civil cases a man is presumed sane and an act of suicide does not overcome the presumption of sanity. In and of itself an act of suicide does not even create an inference of insanity (Matter of Jacobs, 2 AD2d 774, affd 3 NY2d 723; Roche v Nason, 185 NY 128; Weed v Mutual Benefit Life Ins. Co., 70 NY 561; Strasberg v Equitable Life Assur. Soc. of U. S. 281 App Div 9; Matter of Aponte v Santiago & Garcia, 279 App Div 269; Matter of Hatzistefanou, 77 Misc 2d 594; Matter of Anderson, 3 Misc 2d 869; Richardson, Evidence [9th ed], § 61). In the absence of evidence of insanity the law presumes sanity even in a criminal prosecution of homicide (People v Silver, 33 NY2d 475, 480-481).
It is well established that where it is concluded that in a homicide-suicide the perpetrator and victim died simultaneously any jointly held property belongs to the victim (Matter of Bobula, 45 Misc 2d 745, revd 25 AD2d 241, revd 19 NY2d 818; Bierbrauer v Moran, 244 App Div 87, supra; Matter of Santourian, 125 Misc 668; Van Alstyne v Tuffy, 103 Misc 455). It cannot be concluded as to the realty that the survival of the husband-perpetrator in this case for approximately 20 minutes after the death of his wife-victim leads to any contrary result (Matter of Santourian, supra).
The right to collected or accrued rents in the absence of any *239 agreement to the contrary, is an incident of the ownership of the real property. The property at 4103 Lowerre Place, Bronx, N. Y., having passed to the estate of Enid Pinnock upon her death, any rents flowing from such property since the date of her death are also the property of her estate.
There is no conclusive evidence with reference to the furniture in the marital abode, except an indication that this furniture was part of the joint home of the decedents, which home was used and occupied by both of them. In the absence of some proof of title in either decedent or of the existence of any specific right of survivorship, it is concluded that one half of said furniture was owned by each decedent as a tenant in common. Accordingly, one half of the value of such furniture is the property of the estate of Granville Pinnock and one half is the property of the estate of Enid Pinnock. The fiduciaries in both estates should agree on a procedure for the division or sale of such furniture. In the absence of agreement, either party may make an application for further instructions from the court.
The parties have stipulated that the Chase Manhattan Bank savings account was a joint account with right of survivorship. The account was intact at the time of death of both decedents. A rebuttable statutory presumption exists that an account in this form has the attributes of a true joint tenancy with right of survivorship (Banking Law, § 675). In the instant matter, not only has no evidence been adduced to impugn the presumption, but the parties have stipulated that it is a joint tenancy with right of survivorship. The tenants in such an account, upon the creation of the account, are indefeasibly vested with a present one-half interest in the proceeds of the account (Matter of Bricker v Krimer, 13 NY2d 22; Matter of McKelway, 221 NY 15; Clary v Fitzgerald, 155 App Div 659, affd 213 NY 696). Pursuant to such a tenancy either tenant could at any time while they are both alive withdraw up to one half of the account without any liability to the other tenant. Were the decedent, Granville Pinnock, now still alive, he would have forfeited his right of survivorship in one half of the account by virtue of his wrongful act, but he could not be deprived of his one half of the account without such a deprivation constituting a forfeiture of his own property. While a wrongdoer may not benefit from his wrong, the law does not contemplate the forfeiture of that which is his unrelated to his wrongful act. Granville Pinnock’s right to one half of the *240 proceeds of the account does not flow from his wrongful act. This is a right which he had independent of the termination of his wife’s life since at any time by a simple act of withdrawal he could have deprived her absolutely without her consent of her right of survivorship in one half of the account. This ability on the part of a tenant to unilaterally extinguish his cotenant’s right of survivorship in one half of the property distinguishes a joint bank account from a tenancy by the entirety in real property. In the latter, the right of survivor-ship cannot be unilaterally extinguished.
It is therefore determined that Granville Pinnock, having survived his wife, and having forfeited his right of survivor-ship by dint of his wrongful act, at the time of his death, still had the right to one half the proceeds of the account that belonged to him independent of the death of his wife. His estate has the same right. Accordingly, it is concluded that the proceeds of the joint bank account at the Chase Manhattan Bank belongs one half to the estate of Granville Pinnock and one half to the estate of Enid Pinnock.
The forfeiture doctrine prohibiting a wrongdoer or his estate from profiting from his wrongful act also applies to policies of insurance upon the life of a decedent (Matter of Loud, 70 Misc 2d 1026; Matter of Kaplan, 49 Misc 2d 335; Matter of Eckardt, 184 Misc 748; Smith v Metropolitan Life Ins. Co., 125 Misc 670). Clearly, neither Granville Pinnock nor his estate can profit from the New York Life Insurance Company policy on the life of Enid Pinnock in which Granville Pinnock is named as beneficiary. The named beneficiary being precluded from taking and there being no alternate beneficiary named, under the terms of the contract, this policy is payable to the estate of Enid Pinnock. The contracts of insurance on the life of Granville Pinnock by their terms specifically provide that payment can go to a named beneficiary only if a named beneficiary in fact survives the insured. Each policy further provided that in order to receive the proceeds of the policy the named beneficiary must survive the decedent by a minimum of 15 days. Clearly, this contractual condition for payment was not fulfilled. The rights of all parties under policies of insurance are strictly governed by the terms and conditions of the contract of insurance (Hall v Mutual Life Ins. Co. of N. Y., 282 App Div 203, affd 306 NY 909; EPTL 13-3.2). Enid Pinnock having not in fact survived the insured, there is no surviving named beneficiary on the New York Life Insurance Company *241 and the Columbia Mutual Insurance Company policies on Granville Pinnock’s life. There being no surviving named beneficiary, pursuant to the terms of these policies, the proceeds are payable to the estate of the insured (see Matter of Bobula, 45 Misc 2d 745, revd 25 AD2d 241, revd 19 NY2d 818, supra; 4 Scott on Trusts [2d ed), § 494.4; Union Cent. Life Ins. Co. v Elizabeth Trust Co., 119 NJ Eq 505). Accordingly, the proceeds of both policies on the life of Granville Pinnock are payable to the estate of Granville Pinnock. It cannot be said that the payment of these policies to the estate of Granville Pinnock flows from his wrongful killing of Enid Pinnock since it was not necessary for him to kill Enid Pinnock in order to remove her as a beneficiary. Enid Pinnock was not named as the irrevocable beneficiary on either policy. Under the terms of the policies Granville Pinnock, as the insured, could have unilaterally at any time removed her as a beneficiary without terminating her life.