OPINION OF THE COURT
Ira B. Harkavy, J.
Is it incumbent upon a landlord to invade the province of psychiatry and to make inquiry into the mental status of a tenant before commencing a summary proceeding? The issue presented in the instant case is whether the court should set aside a default judgment entered against an incompetent party, who has not been judicially declared so, because the party was allegedly incapable of reacting to the service of process. Was it the responsibility of the landlord or of the respondent’s family to have a guardian or conservator appointed for the alleged incompetent if they both knew of the incompetency?
This proceeding, a summary proceeding for nonpayment of rent for the months of January and February, 1982 was commenced on or about February 10, 1982. On March 4, 1982, a final judgment of possession on default was entered, upon the respondent Jacqueline Resch’s failure to answer. On March 25, 1982, the respondent was evicted from the subject premises by a Marshal of the City of New York pursuant to a duly executed warrant. That same day, *781 possession of the premises was restored to the landlord. On or about March 29,1982, the subject premises were relet to a third party, namely, Ethel Verducci.
An order to show cause why respondent should not be restored to possession was signed by a Judge of this court on March 31, 1982. A motion to hold the petitioners in contempt of court for violation of the stay against “re-renting, subletting or replacing anyone else in possession of the subject premises”, contained in the March 31, 1982 order to show cause, was commenced by a second order to show cause on April 13,1982. On April 7,1982 by written order, Judge Joseph Slavin of this court granted that portion of the first order to show cause which sought appointment of Jacqueline Resch’s mother, Sylvia Gold-stein, as her guardian ad litem.
A hearing on the motions to restore respondent to possession and to punish the landlord for contempt was held on May 17 through May 19, 1982. The respondent’s newly appointed guardian ad litem testified that she did not learn of the existence of the summary proceedings until after the eviction of the respondent took place. She claimed that since the respondent lacked the requisite mental capacity to understand the nature of the summary proceedings brought against respondent, that the court should vacate the default judgment obtained and restore her to possession of the subject premises. The guardian ad litem admitted however that the respondent had not been judicially declared incompetent and that she took no steps to have a guardian or conservator appointed for respondent prior to the eviction. Testimony was given on behalf of the respondent by her treating psychiatrist and by two representatives from the Department of Social Services, as well as by her guardian ad litem, that showed that the respondent suffers from emotional and psychological problems. Respondent’s psychiatrist testified that the respondent suffers from a psychiatric disorder known as schizophrenia and that her mental condition would impair her ability to comprehend legal papers, including a notice of petition or to take any action in relation thereto.
The psychiatrist that testified on behalf of the petitioners stated that he had occasion to meet and talk with the *782 respondent. He stated that while respondent appeared to be somewhat depressed and withdrawn he generally found her to be lucid, in good contact and correctly oriented. Petitioner’s witness pointed to specific indicia such as the respondent’s ability to read and comprehend a newspaper article and to perform simple arithmetic. He concluded that the respondent would be able to read and comprehend such documents as a notice of petition and petition, particularly a document couched in ordinary, plain English.
Commencing February 16, 1982 and at the time of the eviction the respondent had a home attendant employed through the Department of Social Services, 40 hours per week, to assist the respondent in the apartment, who presumably would have at least seen the Marshal’s 72-hour notice and probably found the dispossess during cleaning up. Respondent’s guardian ad litem urges that the courts are under a duty to provide protection to incompetent persons, whether or not they have been judicially declared so. “CPLR 1201 requires that an adjudicated incompetent appear through his committee”. (Siegel, New York Practice, p 232.) However, if a defendant has not been declared incompetent, it is proper for the plaintiff merely to serve the defendant. Those acquainted with the defendant’s mental condition, may at that time, bring the matter to the attention of the court and move to have a guardian ad litem appointed.
Mrs. Goldstein, respondent’s mother and guardian ad litem, testified that she did not learn of the court proceedings until after the eviction took place. However, she herself introduced a letter into evidence which was sent to her by the petitioners. The letter, dated March 15, 1982, two weeks prior to the eviction of the respondent, returned a $200 rent check and stated: “In view of the fact that legal proceedings have been started and legal expenses have been incurred we cannot accept your check for partial payment”. It is the opinion of the court that the letter gave Mrs. Goldstein clear notice of the impending eviction proceeding. It should then have become incumbent upon her to move to have herself appointed her daughter’s guardian ad litem, or at least to contact the petitioners to discover what *783 legal proceedings were being commenced. Mrs. Goldstein testified that she spoke to petitioners’ agent on several occasions, and yet admits that she never inquired as to the nature of the “legal proceedings” referred to in the letter. Instead, she chose to wait until after her daughter had been evicted.
There is a dispute between the parties as to whether or not Mrs. Goldstein informed the petitioners of her daughter’s psychological condition prior to the commencement of the summary proceedings. Mrs. Goldstein contends that she so informed the petitioners and that therefore petitioners bore the responsibility of bringing the matter to the court’s attention. Although petitioners deny that Mrs. Goldstein ever informed them of her daughter’s condition, they knew Mrs. Goldstein had been present at a prior dispossess hearing concerning the subject premises. In January, 1982, petitioners brought a nonpayment proceeding against the prior tenant, Mrs. Goldstein’s mother. It was at that hearing that petitioners first discovered that the lessee was deceased and that the premises were being occupied by the respondent herein. A stipulation was then entered into settling the dispossess and an agreement was made giving Jacqueline Resch a new lease. Even assuming, arguendo, that petitioners were made aware of Miss Resch’s mental status, the fact remains that Mrs. Gold-stein and the Department of Social Services, both of whom were better acquainted with the respondent’s condition, failed to take any affirmative steps toward the appointment of a conservator or guardian ad litem. While protection of an incompetent has long been the practice of New York courts, it is hardly the responsibility of a litigant to take unilateral action with respect to an adversary. If anyone had the responsibility to inform the court of the respondent’s incompetence it would most likely be the respondent’s mother who was best acquainted with the alleged problem. The legal presumption of competency continues until a conservator or committee has been appointed. (27 NY Jur, Incompetent Persons, p 473; Weed v Mutual Benefit Life Ins. Co., 70 NY 561; Williamsen v State of New York, 207 Misc 281.) The court holds that a landlord is justified in relying upon this presumption of competency *784 and is under no legal compulsion to ferret out the psychological status of a tenant.
Accordingly, the motion to vacate the final judgment and warrant of eviction and restore the respondent Jacqueline Resch to possession is denied.
As to the motion to punish petitioners of contempt for violation of the stay in the order to show cause dated March 31, 1982 the court finds that the apartment was rented to the new tenant prior to the execution and service of the order to show cause. Motion to punish for contempt is therefore denied.