OPINION OF THE COURT
Stanley S. Ostrau, S.
The issues in this discovery proceeding arise from allegations that decedent’s husband (respondent) intentionally caused her death and that, prior to her death, she had withdrawn more than her moiety (one-half) interest from their *129 joint bank account. It is subject to speculation whether these two events are related. Two interesting questions are presented. Does the intentional killing of one joint tenant by the other result in a total forfeiture of the survivor’s interest in the account or only a forfeiture of survivorship rights, thereby permitting the survivor to retain a moiety interest in the account? Second, in the case of an intentional killing of a joint tenant who has withdrawn more than her moiety interest, does her estate or the surviving tenant, who committed the crime, have the burden of proof on the issue of whether the withdrawals in excess of the moiety interest were made with the consent or ratification of the surviving tenant?
The administrator of the estate, decedent’s father, filed this proceeding in which he requested a determination that the respondent by dint of having intentionally killed the decedent had forfeited his interest in two accounts at Citibank, an account at Northside Savings Bank and benefits payable by The United Federation of Teachers Welfare Fund and the New York State Teachers Member Benefits Department. Petitioner contends that these funds should be paid to the estate rather than respondent. Respondent asserts that there is no forfeiture because he has no criminal responsibility for decedent’s death by reason of mental disease or defect.
The parties stipulated that the funds on deposit with the two banks would remain intact and the benefits from the teacher organizations would be deposited with the clerk of the court pending the further order of this court. The terms of the stipulation were embraced in a court order entered on October 2, 1986. Respondent has a present need for funds to pay counsel in the criminal proceedings. To avoid trying the criminal issues before this court, the parties stipulated that this court should make a determination as to whether the respondent is presently entitled to any of the funds at issue even if it is ultimately determined in the criminal proceeding that he intentionally caused decedent’s death.
Respondent contends that, assuming arguendo that he intentionally killed the decedent, he is nevertheless entitled to at least one half of the funds that she had withdrawn from their joint account at Citibank and one half of the funds still on deposit in that account. Respondent, at least by implication, has conceded that he has not shown a present entitlement to the other funds being held subject to the October 2, 1986 court order. Petitioner not only disputes this contention but asserts that, even if respondent is correct on this point, *130 the estate has a setoff arising from an uncollected judgment in the sum of $10,294 in favor of the decedent against the respondent entered in the Civil Court of the City of New York on August 11, 1972.
Accordingly, although respondent has yet to be tried on the indictment which charges him with having committed murder in the second degree on October 17, 1985, for the purpose of this hearing, it is presumed that he has been convicted on this charge. The relevant proof adduced at the hearing is essentially limited to documentary proof.
On May 30, 1985, decedent and respondent established in Citibank a joint account with rights of survivorship. There was deposited into this account No. 69238463 a check in the sum of $28,885.79 which had been made payable to the order of the respondent. This check represented the proceeds of a Totten trust bank account that had been established by respondent’s mother designating the respondent as the beneficiary. On October 11, 1985, decedent withdrew the sum of $27,168.03 from the joint account and transferred this amount to account No. 69229743 in Citibank. The account into which the funds were deposited was a Totten trust account in the name of the decedent in trust for the respondent which had been opened on January 23, 1984. As a result of the above transactions, as of October 31, 1985, the last day of the month in which the decedent was killed, the balance in the joint account was down to $52.35, representing interest earned, and the balance in the Totten trust account was $43,160.16.
There was also admitted in evidence documents which indicate that a $10,294 judgment in favor of decedent against respondent was entered in the Civil Court of the City of New York, County of New York, on August 11, 1972 and that Judge Lester Evens entered an order on March 25, 1987 which vacated the judgment on the basis that the process server had no independent recollection of the service of process nor could his recollection be refreshed. This determination is presently sub judies before the Supreme Court of the State of New York, Appellate Term, First Department.
The record is eloquently silent as to whether respondent had ever consented to or ratified the transfer of the sum of $27,168.03 from the joint account to the Totten trust account. After the parties had rested, respondent’s counsel indicated that he would produce the respondent, who is in custody, to testify if the court believed that his testimony would aid its *131 determination. Petitioner opposed this application and made it clear that objections pursuant to CPLR 4519 would be interposed should respondent attempt to testify about any personal transaction with the decedent. Inasmuch as it does not appear that respondent can testify as to any pertinent matters which would not be subject to a valid CPLR 4519 objection, the application to reopen the hearing is denied.
Petitioner relies on Matter of Bobula (25 AD2d 241, revd on other grounds 19 NY2d 818) and Bierbrauer v Moran (244 App Div 87) in support of his contention that respondent, under the doctrine enunciated in Riggs v Palmer (115 NY 506) that a person should not profit from his own wrongful act, forfeited whatever interest he might have had in the joint account. Respondent counters with Matter of Pinnock (83 Misc 2d 233, 239-240) which clearly holds in the following language that a person who kills his joint tenant forfeits his survivorship interest in the bank account but does not forfeit his moiety interest in the account:
"Pursuant to such a tenancy either tenant could at any time while they are both alive withdraw up to one half of the account without any liability to the other tenant. Were the decedent, Granville Pinnock, now still alive, he would have forfeited his right of survivorship in one half of the account by virtue of his wrongful act, but he could not be deprived of his one half of the account without such a deprivation constituting a forfeiture of his- own property. While a wrongdoer may not benefit from his wrong, the law does not contemplate the forfeiture of that which is his unrelated to his wrongful act. Granville Pinnock’s right to one half of the proceeds of the account does not flow from his wrongful act. This is a right which he had independent of the termination of his wife’s life since at any time by a simple act of withdrawal he could have deprived her absolutely without her consent of her right of survivorship in one half of the account. This ability on the part of a tenant to unilaterally extinguish his cotenant’s right of survivorship in one half of the property distinguishes a joint bank account from a tenancy by the entirety in real property. .In the latter, the right of survivorship cannot be unilaterally extinguished.
"It is therefore determined that Granville Pinnock, having . survived his, wife, and having forfeited his right of survivor-ship by dint of his wrongful act, at the time of his death, still had the right to one half the proceeds of the account that belonged to him independent of the death of his wife.”
*132 This court fully appreciates that Matter of Bobula (supra) and Bierbrauer v Moran (supra) were decided by the Appellate Division, Fourth Department, and Matter of Pinnock (supra) was decided by the Bronx County Surrogate’s Court. Nevertheless, this court concurs with the conclusion in Matter of Pinnock (supra) that, since a joint tenant of a bank account has both the right and power to withdraw his moiety interest in the account at any time by the simple act of signing a withdrawal slip, it is fallacious to reason that the intentional killing of his joint tenant in any way profited the murderer. To the contrary, to conclude that the murder resulted in a forfeiture of his moiety interest would result in the imposition of an additional sanction not set forth in the penal code or by principles of equity (see, Civil Rights Law § 79-b). Moreover, the Pinnock determination is consistent with the line of cases which hold that the intentional killing of one tenant by the entirety of the other results in a forfeiture of the murderer’s survivorship interest in the real property but does not deprive him of his life estate in the real property (Matter of Nicpon, 102 Misc 2d 619; Matter of Busacca, 102 Misc 2d 567; Matter of Hawkins, 213 NYS2d 188).
Consequently, it is determined that the intentional killing of the decedent by the respondent did not result in a forfeiture of the respondent’s moiety interest in the joint bank account. As of the date of decedent’s death, there was approximately $50 in this account. This account has remained intact. Accordingly, respondent is entitled to one half of the present balance in Citibank account No. 69238463.
There remains for determination whether respondent has established a present entitlement to one half of the $27,168.03 which the decedent had withdrawn from the joint account six days prior to her death. It is now well established that, where a joint tenant withdraws more than her moiety without the consent or ratification of the other joint tenant, the other joint tenant or the estate of such tenant has the right to recover the excessive amount withdrawn (Kleinberg v Heller, 38 NY2d 836, revg 45 AD2d 514, on opn sub nom. Matter of Lang, 76 Misc 2d 636). In this case decedent did withdraw more than her moiety but there is no proof as to whether respondent consented to or ratified this withdrawal. Therefore, it is clear that whichever side has the burden of proof on the issue of consent will not prevail. Whenever one of the joint tenants is deceased at the time a contention is raised that an excessive withdrawal was made with the consent or ratification of the
*133 other joint tenant a combination of CPLR 4519 and the hearsay rules make it extremely difficult to prove such consent or ratification was given (see, concurring opn of Judge Fuchsberg in Matter of Kleinberg v Heller, 38 NY2d, supra, at 843). Where it is the surviving joint tenant who has made the excessive withdrawal and the estate of the other joint tenant is seeking the recovery, it appears that the survivor has the "burden of proof that the excess withdrawal was with the direct or implied consent” of the now deceased joint tenant "or had been ratified by her” (concurring opn of Judge Fuschberg in Matter of Kleinberg v Heller, 38 NY2d, supra, at 845-846).
However, petitioner contends that, if the joint tenant who made the alleged excessive withdrawals is deceased at the time it is alleged that the withdrawal was made without consent, it is incumbent upon the joint tenant attacking the withdrawal to show it was made without consent (Matter of Kessler, 55 Misc 2d 17, affd 35 AD2d 710, affd 30 NY2d 821). Surrogate Silverman appeared to so hold in Matter of Kessler (supra, at 22), a case in which the estate of the deceased wife was seeking to recover from the estate of the deceased husband for an excessive withdrawal, wherein he stated:
"Given a case in which a husband and wife, joint tenants of a bank account, are both dead, I am not prepared to say that each party is accountable to the other for all withdrawals made (in excess of one half) and that each must show that the other consented to the withdrawal. This would indeed be to upset informal family settlements and force an accounting from one party to the other by rigid rules in precisely the way that Chief Judge Cardozo in Moskowitz v. Marrow (supra) said the law did not contemplate.
"In these circumstances, I hold that the party who attacks the withdrawal must at least show that it was without consent of the other joint tenant. There has been no such showing.”
It is not necessary to go as far as the determination in Matter of Kessler (supra) to determine that, in this case, principles of equity dictate that the respondent has the burden of proof on the issue of whether he consented to or ratified the excessive withdrawal. He shall have profited from his own wrong, having sealed the decedent’s lips by intentionally killing her, if this court concludes that because her estate is unable to come forward with proof that he had consented to *134 the withdrawal that he is entitled to one half of the withdrawal. Respondent should not be heard to complain that CPLR 4519 has also sealed his lips on this issue because it is his wrongful act which brought about the circumstance which brings CPLR 4519 into play.
Accordingly, it is concluded that respondent had the burden of proof of showing that he did not consent to the withdrawal that the decedent had made from the joint account. Respondent has failed to meet this burden and, therefore, he has not shown a present entitlement to any of the funds that were withdrawn from the joint bank account and deposited in the Totten trust bank account.
In conclusion, respondent is presently entitled to one half of the small amount presently on deposit in account No. 69238463 at Citibank and in all other respects the order of the court entered on October 2, 1986, which essentially maintains the status quo as to the other assets at issue until it is determined whether respondent is criminally responsible for the death of decedent, shall remain in full force and effect. Of course, this determination is without prejudice to the rights of respondent should it not ultimately be established that he intentionally killed decedent. Similarly, should petitioner ultimately reinstate the now vacated civil court judgment, petitioner may utilize whatever rights he has under CPLR article 52 to collect that judgment from any asset of the respondent, including any interest that he might have in the funds being held pursuant to the October 2, 1986 order.