OPINION OF THE COURT
F. Dana Winslow, J.
This action for foreclosure of a mortgage was commenced after defendant, Eugene Goldberg, killed his wife in the presence of his children. The present application of the estate of Janet *288 Goldberg for an order dismissing the complaint based on a lack of jurisdiction, to set aside the judgment of foreclosure and sale and to transfer this matter to the Nassau County Surrogate’s Court, is determined as follows.
As an initial matter, the court finds actual personal service upon the defendant, Eugene Goldberg, pursuant to CPLR 308 (1), in jail, sufficient to bring the defendant within the jurisdiction of the court, notwithstanding the movant’s unsupported protestations that Eugene Goldberg is operating under a disability rendering such service defective.
The substantive issue before the court is what interest, if any, Eugene Goldberg shall retain in the real property formerly held by his deceased wife and himself as tenants by the entirety and what interest, if any, the estate of Janet Goldberg has in such property. The court notes that it is well settled that no one shall be permitted to profit by or enjoy the fruits of his crime (Riggs v Palmer, 115 NY 506; Matter of Nicpon, 102 Misc 2d 619; Matter of Busacca, 102 Misc 2d 567). In accord with this premise the court determines that Eugene Goldberg is therefore disqualified from taking under the will of his wife (Matter of Pikul, 192 AD2d 259; Matter of Pinnock, 83 Misc 2d 233).
Civil Rights Law § 79-b, which has been in effect and unchanged at least since the Penal Code of 1881, abolished the forfeiture of property on a person’s conviction. Historically, section 79-b addressed circumstances in which the conviction of a crime warranted the forfeiture of property to the people of the State, in the nature of deodands, as in the case of suicide or where a person flees from justice. However, the two-sentence declaration of section 79-b does not address shared interests in property, or the creation of new and different interests from those that existed at the time of the commission of the crime.
“[T]he social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership” (Cardozo, The Nature of the Judicial Process, at 43 [1921]). “The principle of survivorship by homicide which actually creates or enlarges a property interest in the killer at the expense of his victim seems indefensible. In all of these cases, if the decedent had not been killed he might have outlived the slayer who thereby acquires property which but for the killing he might never have acquired. It seems but right to prevent such unjust enrichment by resolving all doubts against the slayer, under the assumption that the decedent survived, and thereby *289 give the property to those persons who would have taken it if the slayer had predeceased his victim instead of allowing him to assure his own survival of the decedent by the killing which wrongfully deprives the decedent of his right of survivorship” (Bolich, Acts Barring Property Rights, 40 NC L Rev 175, 187 [1962]).
Historically, the courts have stripped the wrongdoer of his or her interest by creating a legal fiction. The legal fiction of the slayer predeceasing his victim has, most notably, been employed in those factual scenarios in which the slayer has committed suicide. There the courts have not hesitated to strip the slayer’s heirs or devisees of any interest in jointly held property or in property held by the entireties even though the slayer outlived his victim, for the “rule is applicable to the wrongdoer’s estate as well as to himself’ (Bierbrauer v Moran, 244 App Div 87, 89; Uniform Probate Code § 2-803). While this court does not argue with such a result, it declines to employ and thus continue this legal fiction.
The legal fiction of creating a life estate out of a tenancy by the entirety has also been employed by my colleagues in their resolution of the issue presented here. In essence, a conflict exists between the Civil Rights Law which has abolished forfeitures on conviction (see, Civil Rights Law § 79-b), and equitable principles which allow a convicted felon to keep his property but not benefit from his wrongdoing. Notably, in the Matter of Busacca (102 Misc 2d 567, supra) a similar situation arose when an action was brought to determine the rights, if any, of a husband, who was convicted of manslaughter in the first degree for intentionally killing his wife, to the proceeds of the sale of their realty formerly owned by him and his wife as tenants by the entirety. The Nassau County Surrogate’s Court dissected the slayer’s interest and held that he was only entitled to the commuted value of a life estate in one half of the proceeds based on his life expectancy.
Under the facts presented in the instant case, that of a slaying and a foreclosure of property held by the entireties, this court could employ this fiction to determine that the slayer would hold nothing, utilizing the following logic: at the moment prior to the slaying Eugene Goldberg held but a life interest in the property, that is, the right to reside there, and an expectancy that should he survive his wife his interest would then ripen into fee absolute ownership. Here, however, his life estate is being foreclosed and terminated, as a result of his failure to fulfill his contractual obligations under the mortgage *290 and not by operation of law or the court’s decree. Accordingly, he would retain no interest in the instant property once such life estate is terminated.
Conceptually, this approach is flawed and too narrowly applies the maxims stated supra. Several principles operate in directing the court’s opinion in this regard. First and foremost is that the court declines to expand the slayer’s interest, in any fashion.
As noted by William Blackstone a tenancy by the entirety is “described in Law French as being per tout et non per my, ‘by the whole and not by the share (moiety),’ meaning each holds the whole or entire interest and lacks the power to alienate an undivided share” (4 Thompson on Real Property § 33.02, at 97 [Thomas ed]). An intentional slaying is a voluntary repudiation of the essence of an ownership by the entireties and the court cannot countenance permitting a slayer to obtain ownership of a share, a power not held by virtue of the estate, by his heinous act. Rather than dissecting the ownership interest into parts, the court finds that the slayer has alienated himself from the whole. In this respect the alienation differs from that resulting from a divorce, where such ownership is transformed into ownership in common.
The court further notes that the life interest that the slayer held just prior to his act was not a life estate in which he could or would enjoy possession of the property by himself, but was obligated to share this possession with his cotenant. Granting the slayer either a life estate or an interest based on the value thereof which he would enjoy as a sole tenant or singularly hold title to, increases and accelerates what was held just prior to his intentional act. It does not appear to this court that such legalistic maneuvering is necessary or desirable; it appears rather that the destruction of an ownership by the entireties by an intentional slaying serves to alienate all ownership rights in the property. Nor does the court care to employ the legal fiction that the slayer has predeceased his spouse and is therefore bereft of any interest, although in essence, the same result obtains.
The court also declines to equate, for the benefit of the slayer, a cash value for possessory rights-life interest. The court will not invoke its equitable powers to convert such interest from one form to another, just as it declines to divide ownership by the entireties into shares or parts, under the circumstances presented. Neither tenant by the entirety has a share in the estate that is divisible or inheritable, and neither tenant has *291 the power to sever or destroy the estate. Granting the slayer a portion of the interest such as life estate or any portion of any proceeds after a sale, whether by foreclosure or otherwise, in effect, rewards Eugene Goldberg’s act and consequently increases his ownership interest.
The court determines that the legal fiction of creating a life estate must be abandoned as a legal anachronism which impedes the growth of the law. The mores which may have required or impelled consideration of such a concept no longer dictate the use of such an agonized analysis to reach an equitable resolution.
The court, consequently, declines to expand Eugene Goldberg’s interest in the instant property. Granting him any interest in whatever proceeds may result following the foreclosure sale would, in effect, accelerate and increase his interest in this property. Accordingly, the surplus, if any, remaining after the foreclosure sale, shall be paid to the estate of Janet Goldberg.
The estate of Janet Goldberg is found to be a necessary party in interest under the instant circumstances where Eugene Goldberg has pleaded guilty to Penal Law § 125.20, manslaughter in the first degree, a class B felony, has been sentenced and such judgment and conviction is final.
The court directs that the estate of Janet Goldberg be added as a party defendant and the plaintiff is directed to serve upon her estate and the guardian ad litem for the Goldberg children a copy of this order and to provide notice of the sale of the subject property.
The remainder of the application of the estate of Janet Goldberg is denied as moot.